IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DONNIE MACK SELLERS,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN, et al.,<br><br>Defendants. | CV 24–20–H–DWM<br><br>ORDER |

In February 2024, Plaintiff Donnie Mack Sellers, a state prisoner proceeding without counsel, filed a civil rights complaint, alleging that he was subjected to multiple physical and sexual assaults by convicted sex offenders with whom he was incarcerated at the Montana State Prison and denied medical care for his eyes. (*See* Doc. 2.) After his complaint was screened under 28 U.S.C. §§ 1915(e)(2), 1915A(b), (*see* Doc. 8), he filed an amended pleadings on July 11, 2024, (*see* Doc. 9). Following additional screening, Sellers was permitted to proceed against a litany of defendants on a First Amendment claim for retaliation, a Fourteenth Amendment due process claim, and an Eighth Amendment claim for failure to protect and denial of eye/vision care. (Doc. 13.) There are currently four pending motions: (1) Sellers seeks emergency medical injunctive relief regarding his seizure medication, (Doc. 17); (2) the defendants seek dismissal of several of the

1

20 individual defendants for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Doc. 18); (3) Sellers seeks to further amend his complaint; and (4) Sellers requests that summary judgment be entered in his favor against all defendants, (Doc. 23). Both the defendants' motion to dismiss and Sellers' motion to amend are granted in part and denied in part as outlined below. Sellers' other motions, seeking an injunction and summary judgment, are denied.

## BACKGROUND

The following facts are taken from Sellers' Amended Complaint, (*see* Doc. 9), and are assumed to be true and construed in the light most favorable to him, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

Sellers alleges that he was the subject to multiple assaults and threats from other inmates[1] while in custody at the Montana State Prison. (*See* Doc. 9.) Based at least in part on prior assaults that took place in July 2019 and September 2021, there are numerous inmates that Sellers has "separation" from, which means they cannot be housed together. (*See id.* at 16–17.) Nonetheless, Sellers alleges that in February 2023, while on D-unit, a group of inmates led by Inmate Goss threatened to assault Sellers if he did not request to be moved out of the unit. (*Id.* at 14.) According to Sellers, he reported this threat to a "UM Bowley," who said Sergeant

---

[1] Sellers refers to the inmates responsible as "SOHOG" inmates, which means "Sex Offenders and Homosexual Opportunist Gang." (Doc. 9 at 5.) Sellers believes that these inmates receive preferential treatment. (*See id.* at 18.)

2

Brett Coughlin would investigate, though, according to Sellers, Coughlin failed to do so. (*Id.* at 14–15.) Sellers filed a grievance and, on March 2, 2023, Grievance Coordinator Lisa Wirth responded, indicating that an investigation had occurred. (*Id.* at 15.) Sellers followed up with a detention hearing officer in March 2023, and was ultimately interviewed by Housing Administrator Associate Warden Chris Lamb in April 2023. (*Id.* at 16.) While Lamb put in a "separation" order for Goss, he "did nothing" about the other inmates involved in the February incident. (*Id.* at 18.)

Subsequently, an inmate named Jon Old Elk was moved onto D-unit with Sellers, despite being on Sellers' separation list based on the September 2021 assault. (*id.* at 19.) Sellers reported this to Sergeant Anthony Holland on D-unit and Holland told him, "your fucking with my people now, go pack your shit, your going back to highside, or shut the fuck up and learn to such a dick. your choice." (*Id.*) When the case manager got back from leave, she moved Old Elk from D-unit to B-unit, but did nothing about the February 2023 threats. (*Id.* at 20.)

On July 11, 2023, Holland told Sellers that he was being moved to B-unit and when Sellers reminded Holland about his separation from Old Elk, Holland told him, "I don't give a fuck about your separations, your going to B-unit or your going straight to locked housing unit for refusing housing." (*Id.* at 21.) Believing he had no alternative, Sellers went to B-unit. (*Id.*) However, Sellers immediately

3

informed the officer in B-unit, Amanda Kambic, of the issue, and her response was the same as Holland's: "I don't care about any fucking separation needs, if I hear anymore about it, your going to lockup for refusing houseing." (*Id.*) According to Sellers, he was consistently "dogged and threatened" by Old Elk and his cohorts in B-unit. (*Id.* at 22.)

On October 23, 2023, Old Elk and others threatened Sellers' life if he did not move off the B-unit. (*Id.*) On November 1, 2023, Sellers' submitted an informal request to Kambic about the threat. (*Id.*) Kambic took him to her office, told him to "shut the fuck up or lock up" and, after he identified the specific inmates who threatened him, she called them into her office and spoke to them. (*Id.* at 23.) Afterwards, the inmates came to Sellers, told him that Kambic confirmed that he was a "rat" and that they would hurt him if he did not refuse his current housing placement and leave. (*Id.*) On November 2, 2023, Sellers was assaulted in B-unit. (*Id.*) On November 28, 2023, Kambic finally responded to Sellers' November 1 request, indicating that there was no record of anything and that his grievance was denied. (*Id.*) Sellers filed a grievance against Kambic that was rejected. (*Id.*)

On December 31, 2023, Sellers was assaulted in his cell by Inmate Franks. (*Id.*) In the following investigation and disciplinary proceedings, Sellers alleges that acting Disciplinary Hearings Officer Carrie Walsted did not let Sellers present

4

any evidence regarding the assault and decided he was responsible for the altercation ahead of time. (*Id.* at 24.) According to Sellers, Coughlin wrote the hearing decision and falsely stated that Sellers was unable to sign. (*Id.* at 25.) Sellers further alleges that on January 3, 2024, he gave his appeal of the decision to Coughlin and that Coughlin removed the appeal from the envelope before sending the envelope onto the mail room. (*Id.*) That appeal was ultimately denied. (*Id.*)

On January 4, 2024, Kambic submitted a new special classification for Sellers that: (1) stated that he had been involved in fighting and posed a housing problem, (2) put a separation on him (likely for Franks), and (3) changed Sellers' classification from "unrestricted custody" to "high secure." (*Id.* at 26.) On January 8, 2024, Sellers appealed Kambic's classification and he received a response in May 2024 (dated February 17, 2024) that said "nothing at all" and was signed by Kristy Cobban. (*Id.* at 27.) Also, Sellers reports that Franks remained on B-unit after everything, likely because of his close relationship with Kambic and Walsted. (*Id.* at 24, 27.)

On July 5, 2024, Sellers was "assaulted, raped, and robbed in his own cell" by Inmate Little Young Whiteman. (*Id.* at 28.) According to Sellers, this incident was not investigated. (*Id.*)

Sellers further alleges that he did not receive eye surgery, bone surgery or dental surgery despite his injuries from the assaults and that "Defendants . . .

5

Pasha, and Scharf overrode these orders with help from Defendants Wirth, Swanson, Reich, and Cobban."[2] (*Id.* at 5.) He also states that, at some point, he was denied glasses by Scharf and Pasha. (*Id.* at 20.)

Based on the foregoing, Sellers has sued the following defendants: Director of the Department of Corrections Brian Gootkin, Warden Jim Salmonsen, Technical Corrections Bureau Chief Kristy Cobban, Associate Warden Scott McNiel, Associate Warden Chris Lamb, C-unit Manager Amie Garland, Amanda Kambic, Classification Bureau Chief Billie Reich, Brett Coughlin, Duty Sergeant Anthony Holland, Grievance Coordinator Bonnie Swanson, Lisa Wirth, Disciplinary Hearings Investigator Carrie Walsted, John Doe Captain, John Doe Lieutenant, Director of Nursing Melissa Scharf,[3] and Medical Deputy Stephanie Pasha.[4] (*See id.* at 2–3, 12–13.) Of these, only Gootkin, Salmonsen, Cobban, and Scharf are sued in their official capacity. (*See id.*)

---

[2] Sellers includes a Defendant Hash in this list, but Hash was previously dismissed. (*See* Doc. 13.)

[3] Both Scharf's first and last name are spelled myriad ways throughout the filings in the case. For the purposes of this Order, she is referred to as "Melissa Scharf."

[4] Sellers refers to most of the defendants as being "mock" defendants, i.e., "Montana's Organized Consanguinity-Kindred." (Doc. 9 at 5; *but see* Doc. 9-1 at 3 (indicating the "o" stands for "Orchestrated").) The only further explanation of this moniker is Sellers' assertion that "all 23 named defendants are blood family members (mock members) who ha[ve] no supervision at all under defendants Gootkin and Salmonsen." (*Id.* at 8.)

6

ANALYSIS

I.  **Sellers' Motion for Injunction (Doc. 17)**

Sellers alleges that since he filed this lawsuit, Defendants Scharf and Pasha have denied him his seizure medication "in retaliation" for a different action he filed against them, *Sellers v. Lever*, CV 21-5-H-SPW-KLD. (Doc. 17 at 1.) While Sellers attempts to argue that this is not a "new" allegation insofar as it is a continuation of retaliatory conduct by the "Mock DOC Administration," (*id.* at 2), he alleges a distinct and specific retaliation claim that, as he recognizes, is not even premised on the filing of this case. That claim, and any remedy associated with it, must be pursued in a separate action. Accordingly, Sellers' motion for injunctive relief is denied.

II. **Defendants' Motion to Dismiss (Doc. 18)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

7

theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). While pro se complaints are construed liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), "a liberal construction of a pro se complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint," *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). While courts should generally permit pro se litigants an opportunity to amend their complaint to state a plausible claim, *see United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("[D]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.") (internal quotation marks omitted), "[c]ourts are not required to grant leave to amend if a complaint lacks merit entirely," *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

Here, Defendants Garland, McNiel, Reich, Swanson, Scharf, and Pasha ask that they be dismissed from this action because, despite being sued in their individual capacities, Sellers has failed to plead any facts concerning their personal misconduct.[5] That motion is well-taken as it relates to Defendants Garland,

---

[5] Defendants' list of who the motion is on behalf of is misleading. (*See* Doc. 19 at 1, 6.) It fails to include Defendant Garland, despite discussing her substantively, and the motion is also purported to be on behalf of Defendants William Weddington, Roxanne Wigert, and Daniel Hash, who have already been dismissed from this action, (*see* Doc. 13 at 4).

McNiel, Reich, and Swanson; however, Defendants Scharf and Pasha shall remain in the case.

To state a claim, Sellers must specifically identify which individual actors were involved in the deprivation of his rights and the specific actions that were taken. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." (Internal quotation marks and alteration omitted)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

### A.   Amie Garland

Although Sellers has listed "Amie Garland, C-unit, Unit Manager"[6] as a defendant, (*see* Doc. 9 at 12), his pleading contains no further reference to her. She is therefore dismissed from this action.

### B.   Scott McNiel, Billie Reich, and Bonnie Swanson

According to Sellers,

---

[6] Sellers refers to the case manager on D-unit in his pleading and indicates that her name might be "Dohr." (*See* Doc. 9 at 19.) Given the inconsistency in both name and unit, there is no reason to assume that he is referring to Garland.

9

> Salmonsen, just like Gootkin, have full knowledge that defendants Kristy Cobban, Billie Reich, Roxanne Wigert, and other (mock) members in MSP and DOC does import, through (inmate interstate transfer) system mass numbers of sex offenders, homosexuals, which has turned Montana's places of prisoner confinement as a utopia for them. And they are the only inmates who can be hired by [Montana Corrections Enterprises].
>
> Scott McNiel, Billie Reich, William Weddington, Roxanne Wigert, Bonnie Swanson, violated.

(Doc. 9 at 30.) This factual assertion alone is insufficient to state a claim against McNiel, Reich, or Swanson as it not only fails to identify any specific actions those individuals have taken, but actually focuses on the knowledge and conduct of Salmonsen and Gootkin. As argued by Defendants, this is the type of "naked assertion" that is insufficient to maintain a plausible claim. *Iqbal*, 556 U.S. at 678.

However, contrary to Defendants' characterization, Sellers' Amended Complaint contains a further reference to Reich and Swanson. According to Sellers, Reich and Swanson helped Pasha and Scharf "over[i]de" orders for him to receive "eye surgery, bone surgery or dental surgery." (*See* Doc. 9 at 5.) Sellers also indicates that he unsuccessfully grieved his complaints to Swanson. (*See id.* at 7.) Nonetheless, these references do not cure the deficiency as they provide neither context nor identify the duties or responsibilities of these particular defendants. *See Leer*, 844 F.2d at 633.

Thus, Defendants McNiel, Reich, and Swanson are dismissed from this action.

### C.   Melissa Scharf and Stephanie Pasha

Sellers does provide more specific allegations as it relates to Scharf and Pasha, albeit not much more. Sellers alleges that they "overrode" orders to provide him with "eye surgery, bone surgery or dental surgery," (Doc. 9 at 5), and that they "denied [him] glasses," (*id.* at 20). Providing limited context for these allegations, both Scharf and Pasha are also mentioned in the grievance forms that Sellers attached to his Amended Complaint, (*see* Doc. 9-1 at 3, 5, 6.) First, in a grievance dated August 24, 2022, Sellers states: "I was moved and assaulted on 9-14-21 within a couple hours after Melissa Scharf [unintelligible] was served as a defendant, and I believe they are 'as medical supervisors' stopping me from seeing an eye doctor." (*Id.* at 3.) Second, the grievance dated January 4, 2024 is unintelligible, but appears to refer to Pasha. (*Id.* at 5.) Finally, the grievance dated June 25, 2024 and addressed to ophthalmologist Dr. Jesse Standish, states:

> I have sent several kites to you regarding the surgery to my left eye ordered by ophthalmologist Leaver 5 years ago. Defendants Sharf and Pasha has defendants in (case 6-24-20-H-DWM) has overrode that order for at least four years now. I am now blind in my left eye and it is medical that is telling me that you refuse to see me because I filed the above civil action and almost a year ago I tried to discuss my vision problem with you. You refused send to med – my left eye is now blind. The court is allowing me to amend the complaint, so I have no choice but to list you as a defendant.

(*Id.* at 6.)

Based on the limited information provide above, Sellers has stated an Eighth

11

Amendment denial of medical care claim against both Scharf and Pasha. While his pleading leaves much to be desired, he alleges that despite his clear medical need for eye surgery, Scharf and Pasha have consistently refused to provide him care, possibly in retaliation for him filing a lawsuit. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) ("The government has an obligation to provide medical care for those whom it is punishing by incarceration, and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983."). While the proof may not support Sellers' claim, it survives at this stage.

## III. Sellers' Motion to Amend (Doc. 20)

Sellers did not respond to Defendants' motion to dismiss but filed an unrelated motion to amend his pleading. (Doc. 20.) That motion requests two things. First, Sellers notes that Defendant Coughlin works at the Prison even though counsel for defendants was unable to contact him regarding representation, (*see* Doc. 16 at 2), and asks that Coughlin be served by the Marshals. However, it appears that defense counsel has since corresponded with Coughlin, as he is listed as one of the movants in Defendants' motion to dismiss. (*See* Doc. 18.) Thus, while clarification will be sought, service by the Marshals is not required.

Second, Sellers seeks to substitute "Kristy Thompson" for "John Doe Captain." In his Amended Complaint, Sellers alleges that his appeal of the January 2024 disciplinary action was affirmed by another "mock member" whose signature

12

was unintelligible. (Doc. 9 at 26.) Sellers has now identified that person as Captain Kristy Thompson. His request to substitute the "John Doe Captain Defendant" granted.

## IV. Sellers' Motion for Summary Judgment (Doc. 23)

Finally, Sellers asks that judgment be entered against Defendants, even those previously dismissed, because the cabal of "SOHOG" inmates and "mock members" of the Prison Administration, *see supra* n.1, 4, continue to deprive him of his rights and retaliate against him for not being part of their group. (Doc. 23.) However, Sellers has not produced any evidence to "show[] that there is no genuine dispute as to any material fact" and that he "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Sellers has not carried his burden under Rule 56 of the Federal Rules of Civil Procedure, his motion for summary judgment is denied.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Sellers' motion for injunctive relief (Doc. 17) is DENIED.

2. Defendants' motion to dismiss (Doc. 18) is GRANTED in PART and DENIED in PART. Defendants Garland, McNiel, Reich, and Swanson are DISMISSED from this action. The motion is DENIED in all other respects.

13

3.   Sellers' motion to amend is (Doc. 20) is GRANTED in PART and DENIED in PART. It is GRANTED insofar as "Captain Kristy Johnson" is substituted for "Defendant Captain John Doe." Within ten (10) days of the entry of this Order, Defense counsel shall: (a) advise the Montana State Prison of this substitution and indicate whether he is accepting service on behalf of Johnson and (b) clarify whether his notice of appearance includes representation of Coughlin. The motion is DENIED in all other respects.

4.   Sellers' motion for summary judgment (Doc. 23) is DENIED.

DATED this 14th day of April, 2025.

_____
Donald W. Molloy, District Judge
United States District Court