IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DONNIE MACK SELLERS,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN, et al.,<br><br>Defendants. | CV 24-20-H-DWM<br><br><br><br>ORDER |

This matter is before the Court on an amended civil rights complaint filed by Plaintiff Donnie Mack Sellers ("Sellers") under 42 U.S.C. § 1983. (Doc. 9.) A scheduling order was recently entered in the matter. (Doc. 39.) Sellers has also filed a motion for preliminary injunction. (Doc. 27.)

In his complaint, Sellers alleges that he was subjected to physical and sexual assaults by convicted sex offenders with whom he was incarcerated at the Montana State Prison and that he was denied medical care. *See generally*, (Doc. 9.)

In his motion for preliminary injunction, Sellers requests that Montana State Prison be ordered to give him glasses, provide him with a soft food diet, and provide him with dental care and eye surgery. (Doc. 27-1 at 2.)

In response, Defendants contend that Sellers' requests for injunctive relief are moot, in part, as he has received reading glasses and is currently on a soft food

1

diet. (Doc. 33 at 2-3.)  Defendants note that Sellers has received eye care,

including cataract surgery, follow-up appointments, and medication.  In support of

this contention, Defendants provide a chronological list of contacts the Clinical

Services Division has had with Sellers over the years.  (Doc. 33-2.)  It appears that

many of the contacts referenced in the exhibit relates to Sellers' dental or vision

needs.  (*Id.*)

Pertinent the motion at hand, Sellers was seen on December 15, 2024, by the

Clinical Services Division for his pre-operation assessment prior to his right eye

cataract surgery, (Doc. 33-1), and again following the surgery.  (Doc. 33-3.)

Sellers was taken to Bozeman for cataract surgery performed by a provider outside

of the prison.  Following an eye examination in June of this year, eyeglasses were

ordered for Sellers.  (Doc. 33-4.)

Likewise, Sellers' request for a soft food diet is being accommodated.

Defendants provide records that indicate Sellers was granted a soft-food diet for

one month based on his dental needs in April of 2025.  (Doc. 33-5.)  The special

diet ended on May 22, 2025; however, it was reinstated on May 27, 2025, and will

remain in place until May 27, 2026.  (*Id.*)

This Court has no authority to issue orders when a controversy is moot.

"The district court's jurisdiction depends of course upon the existence of a live

case or controversy.  The court has no authority to decide questions that cannot

2

affect the rights of litigants in the case before it." *Mitchell v. Dupnik*, 75 F. 3d 517, 527-28 (9th Cir. 1996). Thus, an action of an inmate becomes moot when the inmate will no longer suffer the harm complained of. *Id.*; *Wiggins v. Rushen*, 760 F. 2d 1009, 1011 (9th Cir. 1985)("[W]here the complainant [who was an inmate] was no longer subject to the allegedly illegal activity, the complaint for an injunction became moot."). Sellers initially claimed he was being denied dental services and a corresponding soft food diet and that Defendants refused to order eye glasses following his surgery in December of 2024. (Doc. 27-1.) But it appears that Sellers is now receiving the relief requested. He is not subject to any allegedly illegal activity, accordingly, these claims for injunctive relief, specifically eye glasses and a soft food diet, are moot.

But to the extent that Sellers believes he is entitled to additional injunctive relief and/or this Court's intervention, he has not met his burden. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies* v. *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

The Prison Litigation Reform Act ("PLRA") mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any

4

adverse impact on public safety or the operation of a criminal justice
system caused by the preliminary relief and shall respect the
principles of comity set out in paragraph (1)(B) in tailoring any
preliminary relief.

18 U.S.C. § 3626(a)(2).

Applying the *Winter* factors, Sellers' request for a preliminary injunction

will be denied.  First, Sellers has not yet demonstrated that he is likely to succeed

on the merits of his case.  Although some of Sellers' claims were determined to be

sufficient to warrant service following this Court's screening of his amended

complaint, he must do more than merely state a claim for relief to demonstrate that

he is likely to succeed on the merits.  *See e.g., Washington v. United States Dept.*

*of Homeland Security*, 598 F. Supp. 3d 1051, 1066 (E.D. Wash. Sept. 14,

2020)(recognizing that the preliminary injunction standard is more demanding than

the lower *Iqbal/Twombly* threshold of plausibility.).

Sellers seems to suggest that discovery in this matter will show that he did

not, in fact, receive all of the medical care outlined in the records provided by

Defendants.  *See*, (Doc. 40 at 5.)  Sellers then goes on to present various

allegations unrelated to the preliminary injunction he filed that are aimed at general

wrongdoing on the part of Montana State Prison officials and individuals within

the Montana Department of Corrections which Sellers believes has resulted in

"murders, suicides, and deaths" of other inmates.  (Doc. 40 at 6, 9-12.)  Sellers

indicates he will provide additional information surrounding these suspicious

deaths in discovery. *See e.g.*, (*Id.* at 12.)

Defendants argue that Sellers cannot show a likelihood of success relative to

his deliberate indifference medical care claims. Defendants note that the records

show that Montana State Prison has consistently provided a course of treatment for

Sellers' dental and vision care during his incarceration. (Doc. 33 at 6.)

Specifically, Defendants point out that in recent months Sellers has: received

ocular cataract surgery, regular vision exams, prescription glasses, a soft food diet,

and routine dental checkups. (*Id.*) Further, Defendants note that Sellers' own

filing confirms that he received surgery in December of 2024 and was scheduled

for an eye exam following surgery in which he would receive glasses. (*Id.*)(*citing*

Doc. 28, ¶¶7-8.) And while Sellers alleges that he has been unable to obtain

surgery in his left eye due to Montana State Prison's purported non-payment of the

bill for his right eye surgery, it is also noteworthy that the eye surgeon, Dr.

Harberts, stated: "Hold on scheduling left eye until after he has recovered from

right eye surgery. High risk of reoperation with the left eye due to previous

trauma." (Doc. 35-9 at 2.) It appears that Dr. Harberts discussed the increased risk

of further eye surgery with Sellers given his current eye health and the possibility

that additional surgery to his left eye will present the possibility of "no

improvement, loss of vision, infection, hemorrhage, retinal detachment, pain" and the potential for more subsequent surgery.  (*Id.*)

Defendants' position is well taken.  Based upon records reflecting Sellers' recent and ongoing medical care, at this juncture, Sellers has not demonstrated a likelihood of success on the merits.

Second, Sellers has not established that he will suffer irreparable harm absent this Court's intervention.  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F. 2d 668, 674 (9th Cir. 1988).  Based upon the facts and records, it appears that Sellers is being provided with medical and dental attention and that there is a valid basis to delay further eye surgery at the present time.

The third and fourth factors of a preliminary injunction test- balance of equities and public interest- merge into one inquiry when the government opposes a preliminary injunction. *See, Drakes Bay Oyster Co. v. Jewell*, 747 F. 3d 1073, 1092(9th Cir. 2014).  The "balance of equities" concerns the burdens or hardships to the plaintiff compared with the burden on defendants if an injunction is ordered. *See, Winter*, 555 U.S. at 24-31.  The "public interest" mostly concerns the injunction's "impact on nonparties rather than parties." *Bernhardt v. L.A. Cnty.*, 339 F. 3d 920, 931 (9th Cir. 2003)(citation omitted).

7

The balance of equities do not tip in Sellers' favor. As set forth above, Sellers has been receiving care and is not suffering irreparable harm. Sellers asks this Court to review and reverse decisions made by those familiar with and directly involved in his ongoing medical care. This Court is not in the best position to do so. While Sellers' health issues are complex, it appears that Montana State Prison medical officials are working to manage and respond to the ongoing and dynamic health challenges Sellers presents.

And although these last two factors merge, there is no reason to believe that in this case an injunction is in the public interest. While "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F. 3d 990, 1002 (9th Cir. 2012), at this juncture there is no clear indication that an Eighth Amendment violation has occurred. Moreover, this Court is required to afford appropriate deference to those officials managing a prison environment. *Myron v. Terhune*, 476 F. 3d 716, 719 (9th Cir. 2007). The injunctive relief Sellers requests would interfere with correctional operations. Accordingly, the balance of equities and hardships does not favor granting an injunction, nor is a preliminary injunction in the public interest.

The Court has issued a scheduling order in this matter. Any additional information Sellers wishes to disclose to Defendants can be done in the normal course of discovery. Sellers faces no demonstrable irreparable harm in the interim.

8

To the extent that Sellers seeks to supplement his motion for a preliminary injunction with information regarding a purported assault that occurred on May 12, 2025, *see* (Docs. 34 and 34-1), he may not do so here. This event and the exhibits provided do not relate to his motion for a preliminary injunction or the relief sought.

Accordingly, the Court issues the following:

**ORDER**

1. Sellers' Motion for Preliminary Injunction (Doc. 27) is DENIED.

2. All of the deadlines set forth in the Scheduling Order (Doc. 39) remain in effect.

3. At all times during the pendency of this action, Sellers must immediately advise the Court and opposing counsel of any change of address and its effective date.

DATED this 2ⁿᵈ day of October, 2025.

Donald W. Molloy, District Judge
United States District Court